```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


CLIFTON G. SWIGER               : CIVIL ACTION
                                :
      vs.                       :
                                : NO. 05-CV-5725
ALLEGHENY ENERGY, INC.,         :
ALLEGHENY ENERGY SUPPLY CO.,    :
LLC, ALLEGHENY ENERGY SERVICE   :
CORP., and MORGAN, LEWIS &      :
BOCKIUS                         :
```

## MEMORANDUM AND ORDER

**JOYNER, J.**                                          **February 5, 2007**

This case is once again before the Court for disposition of Defendants' Renewed Motions to Dismiss for Lack of Jurisdiction. For the reasons outlined below, the motions shall be granted and Plaintiff's complaint shall be dismissed without prejudice and with leave to Plaintiff to re-file it in the appropriate court.

### History of the Case

As we previously discussed in our Memorandum and Order of May 18, 2006, this case arises out of an anonymous message which Plaintiff, Clifton Swiger, posted on the Yahoo! World Wide Web portal message board devoted to Allegheny Energy, his then-employer, on July 23, 2003. Mr. Swiger posted this message from his home computer on his own time, using his personal Yahoo! account and a nickname to conceal his true identity, although his message did indicate that he was a long-time, non-exempt

Allegheny Energy employee.

As Mr. Swiger's message was apparently racially derogatory and critical of Allegheny Energy management, on October 16, 2003, attorneys Steven Wall and Joseph Frabizzio of Morgan, Lewis & Bockius' Philadelphia office, commenced an action on behalf of Allegheny Energy in the Court of Common Pleas of Philadelphia County by filing a Praecipe for Writ of Summons against "John Doe," identifying the case type as one in tort for breach of fiduciary duty and breach of the duty of loyalty. Simultaneously, Messrs. Wall and Frabizzio filed an "Emergency Motion for Issuance of a Subpoena Duces Tecum Outside the Commonwealth of Pennsylvania" to procure a subpoena to the custodian of records of Yahoo!.  The Philadelphia County Court of Common Pleas granted the motion, issued a commission and Brian L. Johnsrud, an attorney in Morgan Lewis' Palo Alto, California office obtained a subpoena from the Santa Clara County California Superior Court directing Yahoo!'s Records Custodian to disgorge all documents in its possession regarding the identity, whereabouts and records of the plaintiff.  Yahoo! complied, on November 25, 2003, the Philadelphia County action was discontinued and on December 10, 2003, the plaintiff was terminated from his employment "for placing a racially derogatory posting on the Yahoo! message board in violation of Allegheny Energy's Positive Work Environment expectations..."

Plaintiff instituted this action on October 28, 2005 against the defendants under the state common law theories of abuse of process, wrongful use of civil proceedings, invasion of privacy and wrongful discharge.  Jurisdiction was based on diversity of citizenship.  Morgan Lewis moved to dismiss (and the Allegheny Energy defendants joined in that motion) on the grounds that because it had four partners[1] resident in the United Kingdom and Japan, it is not a citizen of *any* domestic or foreign state and thus is not subject to diversity jurisdiction under 28 U.S.C. §1332(a).  We stayed that motion and directed the parties to take jurisdictional discovery into the citizenship, residency and domicile of all of the Morgan Lewis partners who reside in foreign countries.  The parties have now completed that discovery and, after reviewing the evidence submitted, we now make the following:

## Findings of Fact

1.  Charles G. Lubar has been a partner in Morgan Lewis' office in London, United Kingdom since 1981.  From 1985 to 2005, Mr. Lubar resided at 82 Onslow Gardens, London, SW7; he owned

---

[1] In its Memorandum of Law in Support of its Renewed Motion to Dismiss filed on October 3, 2006, Morgan Lewis states that it is no longer relying on Rachel Gonzalez to support its argument against diversity jurisdiction as she is no longer a partner with it.  (See p. 2, footnote 2 to Morgan Lewis' Memorandum of Law in Support of Renewed Motion to Dismiss).  Additionally, our recent review of Morgan Lewis' website reflects that John Sasaki is also no longer affiliated with Morgan Lewis.  Accordingly, we examine the citizenship/domiciles of only two Morgan Lewis partners--Gregory Salathe and Charles Lubar.

that property from 1987 until December, 2005 when he sold all but a studio flat.  In November, 2005, Mr. Lubar purchased a home at 36 Onslow Gardens, London, which is currently being renovated.  At present, he resides in a rented home at 155 Sloane Street in London and plans to remain there until the construction is completed at the 36 Onslow Gardens property.

     2.  The 82 Onslow Gardens home consisted of four bedrooms, including the top floor flat.  After renovations, the 36 Onslow Gardens residence will have three bedrooms and Mr. Lubar's rented property on Sloane Street has three bedrooms.

     3.  Mr. Lubar's last declared residence in the United States was at 700 Seventh Street, S.W., Washington, D.C., where he resided from 1967 until 1969.

     4.  Since 1999, Mr. Lubar has also owned a one-bedroom apartment in New York City located at 24 West 55th Street.  This apartment contains a minimal amount of personal property.

     5.  Although Mr. Lubar's "spouse has maintained the same addresses" as has he "during the relevant time period," it is unclear where she has resided.  From January 1, 2004 to the present, Mr. Lubar has not had any minor children.

     6.  Mr. Lubar typically visits the United States four to six times a year for an average duration of one to two weeks for business and personal reasons.  He primarily travels to New York, Washington, D.C. and Florida.  Since January 1, 2004, Mr. Lubar

has not visited the U.S. for a period longer than one month. When Mr. Lubar travels to New York, he stays in his West 55th Street apartment.

    7.  Mr. Lubar is licensed to practice law in Maryland and is an inactive member of the District of Columbia Bar.  The address that he provides to the State Bar of Maryland is the address of Morgan Lewis' London office.  Mr. Lubar has also been registered to practice law in the United Kingdom as a registered foreign lawyer since 1971, giving as his address therefor an address for inter-lawyer correspondence: Morgan, Lewis & Bockius, DX42603, Cheapside 1.

    8.  Mr. Lubar does not own any motor vehicles.

    9.  Mr. Lubar has a current driver's license in Washington, D.C.  The address which is listed on that license is that of an unidentified friend and is denoted as 3738 Huntington Street, N.W., Washington, D.C., 20015-1818.

    10.  Mr. Lubar is registered to vote in both the United States and the United Kingdom.  He last voted in the U.S. Presidential election in 2000 and voted in the last U.K. elections, which took place some 3-4 years ago.

    11.  Since January 1, 2004 to the present, Mr. Lubar has filed an individual tax return with the United States federal government and the United Kingdom.  The address listed on both tax returns is his home address in London.

12. Mr. Lubar has brokerage accounts in both the United Kingdom and Switzerland, and has bank accounts on the Island of Jersey, Switzerland and in Washington, D.C. He also has a Citibank mortgage account in New York that "may have been linked to a bank account." Mr. Lubar provides his home address in London to each bank or brokerage.

13. Mr. Lubar holds two mortgages on his 36 and 82 Onslow Gardens residences in London with Coutts Bank and Bank Leumi. He has a mortgage with Chase Bank on an unidentified apartment in New York City, which was to be sold and the loan paid off in October, 2006. He holds another mortgage with Citibank on the 24 W. 55th Street apartment in New York City. Mr. Lubar uses his London residential address for correspondence relating to all of his mortgages.

14. Mr. Lubar is involved with a number of social, artistic, alumni and civic organizations in the United Kingdom, including the Executive Committee of the Benjamin West Group, the Queen's Club, Democrats Abroad, the Yale Club of London and the Harvard Club of London. He is also a member of the Yale Club of New York and is a non-resident member of a country club in Rockville, Maryland.

15. Since January 1, 2004 to the present, Mr. Lubar has not attended any CLE seminars in the United States; he has, however, been a frequent lecturer at seminars taking place in the United

Kingdom.

16.  Gregory R. Salathe joined Morgan Lewis as a partner in January, 2003 in the New York office.  He moved to Japan in August, 2003 when he began working in Morgan Lewis' Tokyo office.  Mr. Salathe, his wife and infant daughter lived in an apartment located at 4-14-13 Takanawa, Minato-ku, Tokyo for one year.  From there, they moved to another apartment in Tokyo located at 2-4-11 Moto-Azabu, Minato-ku, Tokyo where Mr. Salathe, his wife, now-three-year-old daughter and one-year old twin sons currently reside.

17.  Mr. Salathe leases his current apartment and leased his first apartment in Tokyo.  Since January 1, 2004, he has not owned any real estate.

18.  Mr. Salathe's last declared residence in the United States was at 201 Chambers Street, Apartment 7G, New York, N.Y., where he resided for approximately one year before moving to Japan.

19.  Mr. Salathe travels to the United States some three-four times per year for an average duration of one week.  Since August, 2005, he has not visited the United States for a period longer than one month.

20.  Mr. Salathe is licensed to practice law in the State of New York and is a registered foreign lawyer in Japan.  The address that he provides to both the State Bar of New York and

the Minister of Justice in Japan is Mr. Salathe's office address in Tokyo.

21. From January 1, 2004 to the present, Mr. Salathe has not attended any CLE seminars located in the United States.

22. Since January 1, 2004 to the present, Mr. Salathe has filed an individual tax return with both the U.S. federal government and the Japanese government. The address provided on both of these tax returns is his home address in Tokyo, Japan.

23. Mr. Salathe is registered to vote in New York. He voted in the 2004 U.S. Presidential election.

24. Mr. Salathe owns two vehicles that are registered to him in Japan. The address that is provided on the registration documents is Mr. Salathe's home address in Tokyo. Mr. Salathe also owns shares of stock and the address for the registration documents is the Morgan Lewis office address in New York.

25. Mr. Salathe has a current New York driver's license listing his former address at 201 Chambers Street in New York City. He is also in the process of applying for a Japanese driver's license.

26. Mr. Salathe has one Citibank bank account in New York, which uses the Morgan Lewis' New York office address. He also has two brokerage accounts in New York with CS First Boston and Merrill Lynch and a 401k account with Principal Financial, all of which use the Morgan Lewis' New York office address. In

addition, Mr. Salathe has two personal bank accounts in Japan: one with a Japanese bank and one with the Japanese branch of Citibank.  Both of these accounts list the Morgan Lewis' office address in Tokyo.

27.  Mr. Salathe presently has one loan from Citibank for the capital contributions to the Morgan Lewis partnership, which was arranged through the New York office of Citibank.  The address provided for this loan is the Morgan Lewis' office address in New York City.

28.  Gregory Salathe is a member of the American Chamber of Commerce in Japan.

29.  As Mr. Salathe owns no real estate, all of his personal property, including his furniture, books, clothing, personal effects and memorabilia, are located in Tokyo, Japan.  Most of his financial assets are managed in the U.S.

30.  As of October 28, 2005, the filing date of the complaint in this matter, neither Gregory Salathe nor Charles Lubar had any fixed or immediate plans to leave their foreign locales to return to any particular state in the U.S. to live on an indefinite basis.

### Discussion

As we have previously outlined the applicable law in our Memorandum and Order of May 18, 2006, we hereby incorporate that Memorandum by reference, albeit it with a correction as to the

appropriate standard for proving a change in domicile.  Indeed, several months after we issued our memorandum opinion, the U.S. Court of Appeals for the Third Circuit ruled on August 16, 2006 in McCann v. Newman Irrevocable Trust, 458 F.3d 281 (3d Cir. 2006), that it is the preponderance of the evidence standard and not that of clear and convincing evidence which is the applicable standard to be employed in determining whether a change in domicile has been established.  Thus, contrary to our discussion on page 9, while there remains a presumption in favor of the old domicile, it is now clear that the party asserting a change in domicile must prove it by a preponderance of the evidence. Accordingly, "[t]he party claiming a new domicile bears the initial burden of producing sufficient evidence to rebut the presumption in favor of the established domicile.  If the party does so, the presumption disappears, the case goes forward and the party asserting jurisdiction bears the burden of proving diversity of citizenship."  McCann, 458 F.3d at 288.

Applying these precedents to the matter at hand, we find that Morgan Lewis has in fact produced sufficient evidence to rebut the presumption that Charles Lubar was domiciled in the U.S., specifically in Washington, D.C.  Indeed, it appears clear to this Court that Mr. Lubar has worked and resided in the United Kingdom for more than twenty-five years and that his roots in that country are by now far deeper than are his limited ties to

this one in that he owns and has owned several homes there, he votes there, has most of his financial assets there, has social and civic connections there and appears to possibly even have dual citizenship.  Although we would have preferred that the parties provide a more complete record in the form of deposition testimony on the matter of where the partners at issue are domiciled, the evidence before us strongly suggests that Mr. Lubar has no intention of ever again making the U.S. his home.  We therefore find that Mr. Lubar is a domiciliary of London.

    Mr. Salathe's ties to Japan are far more attenuated.  He has resided there for little more than three years and does not own his residence there.  He does not vote there, and most of his financial assets are held and/or managed in New York, using the Morgan Lewis' New York office address.  He voted in the 2004 U.S. Presidential election and his sole civic association is with the American Chamber of Commerce.  While it clearly appears that Tokyo is Mr. Salathe's present home, we cannot find the evidence before us to be sufficient to overcome the presumption that he remains a New York domiciliary who intends to at some point return to New York.

    Given that for diversity purposes, the court must consult the citizenship of *all* of the members of an artificial entity such as a general or limited partnership and because a United States citizen who is not domiciled in one of the United States

cannot invoke diversity jurisdiction in one particular state, we must conclude that we are without jurisdiction to act in this matter.  See, Carden v. Arkoma Associates, 494 U.S. 185, 196-196, 110 S.Ct. 1015, 1021, 108 L.Ed.2d 157 (1990); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989); Herrick Co., Inc. v. SCS Communications, Inc., 251 F.2d 315, 322 (2d Cir. 2001); Creswell v. Sullivan & Cromwell, 922 F.2d 60, 69 (2d Cir. 1990); Brooks v. Girois, Civ. A. No. 03-3260, 2003 U.S. Dist. LEXIS 14051 (E.D.Pa. August 11, 2003); Gefen v. Upjohn Co., 893 F.Supp. 471 (E.D.Pa. 1995).  In so holding, we echo the observation made by the Honorable Berle M. Schiller of this Court in the Brooks, supra, case:

> Although adopting this rationale would leave Defendant --as well as all similarly situated parties--unable to be sued in federal court under §1332(a)(1) as [it] is a United States citizen domiciled abroad, ...(citation omitted) or under §1332(a)(2), as [its] United States citizenship controls,...(citation omitted) and there is no complete diversity between the parties as Plaintiff is also a United States citizen, (citation omitted), this anomaly must be rectified by Congress, not by the Court.

Brooks, 2003 U.S. Dist. LEXIS at *9.

We shall therefore grant the defendants' motion to dismiss this matter for lack of jurisdiction and dismiss this matter without prejudice to the Plaintiff's right to re-file his claims in the appropriate court.

An order follows.

```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA


CLIFTON G. SWIGER                 : CIVIL ACTION
                                  :
      vs.                         :
                                  : NO. 05-CV-5725
ALLEGHENY ENERGY, INC.,           :
ALLEGHENY ENERGY SUPPLY CO.,      :
LLC, ALLEGHENY ENERGY SERVICE     :
CORP., and MORGAN, LEWIS &        :
BOCKIUS                           :
```

**ORDER**

   AND NOW, this    5th    day of February, 2007, upon consideration of Defendants' Renewed Motions to Dismiss Plaintiff's Complaint for Lack of Jurisdiction (Docket Nos. 16 and 17), it is hereby ORDERED that the Motions are GRANTED and this matter is DISMISSED without prejudice to Plaintiff's right to re-file his claims in the appropriate Court.

                                   BY THE COURT:


                                   s/J. Curtis Joyner
                                   J. CURTIS JOYNER,     J.